UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TERRY D. LEWIS,<br>        Plaintiff<br>v.<br><br>HARRIS HEALTH SYSTEM,<br>        Defendant | §<br>§<br>§<br>§   CIVIL ACTION NO._____<br>§<br>§<br>§   DEMAND FOR JURY TRIAL |

### PLAINTIFF'S ORIGINAL COMPLAINT

To the Honorable United States District Judge:

COMES NOW Terry D. Lewis ("Lewis" or "Plaintiff"), and files her original complaint against Harris Health System ("HHS" or "Defendant") for violations of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 12101 Americans with Disabilities Act of 1990 (ADA)

### PARTIES

1. The plaintiff, Terry D. Lewis, is an African American woman who resides in Missouri City, Texas in zip code 77489, in Harris County, Texas.

2. The defendant, HHS is a Hospital operating in Houston, Harris County Texas. Per the Secretary of States website, Defendant may be served at its Corporate Office located at 2525 Holly Hall#231 Houston, Texas 77054.

3. At all times mentioned in the causes of action into which this paragraph is incorporated by reference, each and every defendant was the agent or employee of the employer HHS. In doing the things alleged in the causes of action into which this paragraph

is incorporated by reference, each and every defendant was acting with the consent, permission, and authorization of the employer HHS. All actions of each defendant alleged in the causes of action into which this paragraph is incorporated by reference were ratified and approved by the officers or managing agents of every other defendant.

## JURISDICTION & VENUE

4. This case is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq, and 42 U.S.C. § 12101 American with Disabilities Act of 1990 (ADA), This Court has jurisdiction of this case according to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

5. This Court has supplemental jurisdiction over Plaintiff's state statutory and common law causes of action arising out of the same case or controversy as the civil action over which this Court has original jurisdiction. 28 U.S.C. § 1367(a).

6. The unlawful employment practices described herein were committed in the Southern District of Texas, and, on information and belief, all records relevant to the causes of action alleged in this complaint are kept in the Southern District of Texas. For the above reasons, venue is invoked pursuant to 28 U.S.C. § 1391(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff received a letter terminating her employment on October 4, 2017.[1] Plaintiff filed an internal grievance with defendant challenging the termination in which she reiterated her prior complaint of discrimination and went through the company's internal grievance process for HHS.[2] After unsuccessful efforts for a reversal of the decision to

---

[1] *Exhibit C page 9 - Termination Letter*
[2] *Exhibit F page 1 – Notice of Grievance Hearing*

terminate her employment, Plaintiff timely filed a charge of discrimination with The Equal Employment Opportunity Commission (EEOC) on April 05, 2018 [3] to challenge the discrimination and retaliation suffered while employed by defendant based on her Disability. A Right to Sue letter was issued to Plaintiff on April 10, 2016[4] and now Plaintiff timely files this lawsuit within 90 days of the date she received the letter. Plaintiff has exhausted all applicable administrative remedies available to her prior to filing this lawsuit.

## FACTUAL BACKGROUND

8. Plaintiff is a 53 yea old an African American female named Ms. Terry Lewis. She was hired as a part time employee in May 1999. In August 2000, Ms. Lewis became a permanent full time employee.  She received a promotion to Psych Tech II in April 2012. According to her HHS personnel file, she received satisfactory performance evaluations each year while employed by HHS. During 2005, Ms. Lewis became severely ill and was initially diagnosed with an anxiety disorder. In later years, she continued to be on FMLA for her condition. Ms. Lewis found out nearly a decade later that she was misdiagnosed and had Epilepsy/seizure disorder.[5] This was documented and her intermittent FMLA was not an issue at HHS until Marguerite Hillar became Ms. Lewis' assigned manager.

9. Marguerite Hillar was assigned as Ms. Lewis' manager at some point during 2014. For years Ms. Lewis only had annual reviews in December of each year. However, Ms. Hillar did a June review and a December review in 2014.  Ms. Lewis found this very unusual as this had never happened in the nearly 15 years she had been employed by HHS. Ms. Hillar noted in the attendance section of this review that she was aware of Ms. Lewis' documentation of approved intermittent

---

[3] Exhibit A page 1 – EEOC Charge
[4] Exhibit A page 2 – EEOC Right to Sue Letter
[5] Exhibit D page 2 - Medical documentation of Epilepsy

FMLA. This showed Ms. Hillar was aware that occasionally Ms. Lewis may need to be off due to an FMLA related illness or may need an accommodation.

10.     In December of 2015, Ms. Lewis had another annual performance evaluation. Despite Ms. Lewis' personnel file containing numerous compliments and after being employed for 15 years without an incident of even one derogatory mark, Ms. Lewis received her first verbal counseling from Ms. Hillar. Ms. Hilar gave Ms. Lewis a verbal counseling for an error in scheduling a patient. Despite the verbal counseling, Ms. Lewis still received a satisfactory performance evaluation. Although Ms. Hillar acknowledged Ms. Lewis had intermittent FMLA in the last review and that FMLA was renewed, she still made comments about Ms. Lewis' attendance in the review.

11.     In March of 2016, Ms. Lewis again received a write up from Ms. Hillar. However, this time Ms. Hillar was attempting to hold documented FMLA absences against Ms. Lewis in violation of federal laws under ADA.  Ms. Hillar's written counseling on March 17, 2016 alleges Ms. Lewis failed to comply with company policy 6.13 to follow notification guidelines for unscheduled absences on March 4th and March 16, 2016.[6]  However, in the same document it states her start time was 730am and on both occasions Ms. Lewis actually did call in as soon as she woke up and realized she was having a medical episode that would impair her ability to work that day. On March 4th she called at 6:10am and on March 16th she called in at 6:12am. HHS Policy 6.13 defines an Improper Notification as "*Failure of the employee to notify the supervisor in accordance with applicable policy and departmental procedures of the need to miss some or all of*

---

[6] *Exhibit C page 1 – Written Counseling March 17, 2016.*

*a scheduled shift*." [7] Both times are almost 1.5 hours before her scheduled start time which is reasonable considering the early morning hour when her shift began.

12. The harassment about her absences continued throughout the 2016 year, via comments and verbal threats of write-ups. Ms. Lewis began going to HR and her Union Rep to report the harassment. Later that year in the last quarter of 2016, Ms. Lewis was at the end of her shift and did not feel well. Around 9pm that night she felt worse and called in from work for an FMLA related absence for the next morning. In response, Ms. Hillar again attempted to give Ms. Lewis a write-up for a Policy 6.13 Improper Notification violation even though Ms. Lewis called in nearly 10 hours before her scheduled shift start time. Ms. Lewis knew she called in the night before, felt this was just more harassment, and grieved the write up. After meeting with Ms. Lewis, her union rep, and a Human Resources rep in the grievance process over several weeks later, it was proven that the write up from Ms. Hillar was not valid, was inappropriately given, and was removed from Ms. Lewis' file. Ms. Lewis reported to HR and to her union rep that she felt Ms. Hillar was discriminating against her because she had FMLA for her disability because Ms. Hillar kept complaining about her being out and kept trying to write her up for attendance.

13. Each year Ms. Lewis's annual evaluations have been primarily at the end of the year in December except December 2016. This was just after she filed a grievance against Ms. Hillar. During this time, she was going through the grievance of the erroneous attendance write up that was overturned. The grievance should not have delayed Ms. Lewis' evaluation. Ms. Lewis feels Ms. Hillar intentionally delayed the review process after the outcome of the grievance. Ms. Hillar retaliated against Ms. Lewis by giving her lower scores in every category than she had ever

---

[7] *Exhibit B – page 1 - HHS Attendance Policy*

received in prior evaluations even though it contradicted the glowing comments for Outstanding customer service in Section one of the review.[8]

14.     In Section One of the performance evaluation Ms. Lewis received the score of Outstanding (4.0) for Patient Satisfaction and it stated she worked "*collaboratively with colleagues to deliver patient/customer service that meet or exceed patient expectations as evidenced by her patient satisfaction scores*."[9] However, in the same section graded as "Service First Behavior" Ms. Hillar put comments stating, "*Ms. Lewis has been coached on several complaints regarding argumentative behavior...*"[10] After Ms. Lewis checked her personnel file, she has only one coaching in all her years prior to this evaluation and it was the one previously mentioned from 2015 for the clerical error and not for a conduct or behavior issue.

15.     Although the grievance meeting discussions are supposed to be confidential, Ms. Hillar went back to the work area and told another employee that Ms. Lewis called her a liar and began to discuss what happened in the grievance meeting.  Ms. Hillar also displayed her disdain and anger from the conversations in the grievance meeting by putting that same comment in Ms. Lewis' Feb 2017 evaluation in the section labeled "Service First Behavior." Ms. Hillar's entry shows a comment made during that meeting stating Ms. Lewis, "*went as far as calling me a liar.*"[11] This comment was only made by Ms. Lewis in the grievance meeting because Ms. Lewis proved Ms. Hillar actually lied and continued to maintain that lie when Ms. Hillar wrote her up alleging she did not call in before missing work.

---

[8] Exhibit E – page 1 through 6 – Feb 2017 Performance Evaluation /Review
[9] Exhibit E - page 1 - Feb 2017 Performance Evaluation /Review
[10] Exhibit E – page 1 - Feb 2017 Performance Evaluation /Review
[11] Exhibit E – page 2 - Feb 2017 Performance Evaluation /Review

16. Ms. Hillar continued to retaliate against Ms. Lewis and issued multiple write-ups for alleged attendance violations under the same Policy 6.13. One of the write-ups in April 2017 included alleged attendance violations for a 16-month period beyond the 12-month period required in the company policy. However, Ms. Hillar insisted on giving the write up anyway. Ms. Hillar issued the following write-ups on the following dates.

- March 8, 2017 (for an approved FMLA related absence in violation of ADA guidelines)[12]
- April 7, 2017 (January 2016 through April 7, 2017 –covered a *16 month period and did not list dates of each alleged violation.*[13]
- May 31, 2017 (May 18, 2016 through April and May 2017) *did not list dates of each alleged violation*[14]
- August 7, 2017 (August 2016 through August 2017) *did not list dates of each alleged violation*[15]

There were no coachings for missed punches during the 2016 year before Ms. Lewis made her complaints of harassment to HR and the Union. Ms. Hillar did not start making an issue of missed punches until after Ms. Lewis reported she felt like she was being harassed and complained that she felt discriminated against because of her disability in the grievance meeting.

17. Ms. Hillar did not accurately list the dates of the violations in the write-ups. Ms. Lewis believes this is because Ms. Hillar did not follow the actual attendance policy guidelines. Ms. Hillar just put a number of occurrences and a time frame. (See Exhibit C pages 3 -5) This is not following the policy. HHS Policy 6.13 on page 2 defines a tardy as, *"Reporting to work or returning from lunch break eight (8) or more minutes after scheduled or within the period authorized for another break during a shift."*[16] The times or extent of the missed punches were

---

[12] *Exhibit C page 2 - Written Counseling March 2017*
[13] *Exhibit C page 3 - Written Counseling April 2017*
[14] *Exhibit C page 4 - Written Counseling May 2017*
[15] *Exhibit C page 5 - Written Counseling August 2017*
[16] *Exhibit B page 2 – HHS Attendance Policy*

not documented in any of the alleged violations listed. At no point in any of the write-ups does Ms. Hillar indicate that any of the missed punches were over 8 minutes establishing a violation of HHS Policy 6.13.

18.    Although none of the write-ups between March 2017 to August 2017 listed each date of the violations, Ms. Hillar demonstrated she knew how to properly document each occurrence in the termination write-up on October 4, 2017 where she listed each alleged occurrence of a missed punch.[17] However, the dates were not accurate. A document in Ms. Lewis' personnel file shows twenty (20) days after she fired Ms. Lewis, Ms. Hillar requested a log of the missed punches.[18] After comparing the 13 dates on the termination letter with the dates on the missed punch log Ms. Hillar requested, Ms. Lewis saw she did not have 13 missed punches as Ms. Hillar indicated in the termination letter. Ms. Hillar in essence created a fraudulent document to justify a reason to fire her. The following six (6) dates from the termination letter are not listed as missed punches on the 10/24/17 missed punch log requested by Ms. Hillar.

- 12/5/16
- 2/15/17
- 3/31/17
- 5/12/17
- 8/3/17
- 9/20/17

Ms. Hillar had a chance to correct her error, acknowledge her mistake, and reinstate Ms. Lewis' employment during the grievance hearing on November 9, 2017.[19] Unfortunately, Ms. Hillar chose not to mention her error from the termination letter in front of her boss and Administrators at the grievance hearing and Ms. Lewis' termination was upheld. Ms. Lewis

---

[17] Exhibit C page 9 - Termination Letter
[18] Exhibit C page 11 through 13 – Punch exception list 4/2016 – 9/2017 requested by Ms. Hillar
[19] Exhibit F page 1 – Notice of Grievance Hearing

then filed for unemployment with the Texas Workforce Commission (TWC). During the investigation, an HHS representative told TWC Ms. Lewis *"failed to punch clock on 9/20/17. Per our documented policy missed punches shall be counted and documented as tardiness*.[20] This is not an accurate statement of the policy again. The policy actually states the missed punch is a tardy if it in excess of 8 minutes of the scheduled arrival time or time to return from lunch.[21]

19.     Ms. Hillar was aware or should have been aware that the majority of the missed punches were due to Ms. Lewis being forced to work while on her lunch break in violation of Department of Labor Laws. On more than one occasion, Ms. Lewis was asked by one or more of the physicians to assist with a psychiatric patient while she was on her lunch break. The help with the patient each time was urgent and needed immediately so Ms. Lewis did as she was told. Ms. Hillar was aware of Ms. Lewis working off the clock during her lunch break and not being paid because of the missed punch notices/forms from Ms. Lewis stated it was due to miss punching back in from lunch.[22] Instead of paying her for the time she worked off the clock, Ms. Hillar chose to dock the full lunch from Ms. Lewis on those dates. To add insult to injury, instead of paying her for the time she worked, Ms. Hillar actually wrote Ms. Lewis up multiple times and ultimately fired Ms. Lewis for having the missed punches when she was called to work for a patient matter during her lunch break.

20.     On or about August 2017, Ms. Hillar suspended Ms. Lewis for expired certification and gave her until the end of the day to get certified.[23] Ms. Lewis called Debi Loger, Executive

---

[20] *Exhibit C page 14 – TWC report with the employer response*
[21] *Exhibit B page 2 – HHS Attendance Policy*
[22] *Exhibit G page 1 – Example of one of the Missed Clocking Correction Request*
[23] *Exhibit C page 6 and 8 – Written Counseling and Certificate with handwritten note from Ms. Hillar*

Director for the American Association of Psychiatric Technicians and explained she had been suspended for an expired certification. Ms. Loger found that strange because she knows of other employees whose certification expired and to her knowledge they were neither suspended nor written up. Ms. Loger told plaintiff that in some cases the people that did not renew the Level II or Level III certification were just demoted to Level I and continued to work for the hospital. Ms. Lewis renewed her certification and took it to Ms. Hillar. Unfortunately, Ms. Hillar was furious because she could not legitimately write Ms. Lewis up or suspend her. Ms. Loger told plaintiff Ms. Hillar called her and was clearly livid that Plaintiff had obtained her certification. Ms. Hillar accused Ms. Loger of not going by the honor system.[24] Ms. Hillar accused Ms. Loger of back dating the certification. Ms. Loger explained to Ms. Hillar that the dates of certification and renewal stay the same regardless of when the actual renewal occurs. Ms. Loger explained to plaintiff that it is much like a vehicle registration. If the registration expires on June 30th and the renewal does not occur until July10th, it does not change the actual due date or renewal date.

21. On September 29, 2017, Ms. Lewis received notice that on October 1, 2017 her FMLA which she had renewed for over 6 years would be administered by Cigna Leave Solutions.[25]

22. On October 4, 2017, five days later and after being employed for nearly 17 years with the defendant, Ms. Lewis received a letter from Ms. Hillar terminating her employment because of the same missed punches that were mostly due to her being asked to work off the clock.

23. On October 31, 2017, Plaintiff received a letter acknowledging her request for a grievance hearing challenging her termination. The letter stated she would have a grievance meeting on November 9, 2017. In this recorded meeting, Ms. Hillar acknowledge that she knew

---

[24] *Exhibit C page 7 - Certificate with handwritten notes from Ms. Hillar*
[25] *Exhibit D page 1 – Sept 29, 2017 FMLA notice from Cigna*

of Ms. Lewis' disability, difficulty remembering, and stated she did not give Plaintiff an accommodation. November 13, 2017 she received a letter from Matthew Schlueter, Chief Nursing Office stating he was upholding the decision to terminate her employment. As a result of the failed grievance process, Ms. Lewis had no choice except to file an EEOC charge.

24. Ms. Lewis requested her personnel file after she was terminated and noticed there were a few problematic issues on her last evaluation that cover 01/01/16 through 02/28/2017. Ms. Lewis also notice the attendance points had been changed. The audit history of the evaluation shows the contents of the review was altered more than once after it was originally completed Feb 28, 2017.[26] Ms. Lewis believes Ms. Hillar went back and changed her attendance on the prior review each time she gave her another attendance write up to make it appear as if she had an attendance problem. The review was approved by Ms. Hillar's boss on March 1, 2017. Although the review was finished and approved, the next month in April 2017 it shows the review was "Completed" again by Ms. Hillar. This coincides with the time frame of Ms. Hillar giving Ms. Lewis an attendance write-up in April 2017.[27] Again the next month it shows the review was "Updated" on May 12, 2017 by Ms. Hillar. Ironically, Ms. Lewis also got an attendance write-up the same month her review was updated again by Ms. Hillar.[28] Ms. Lewis believes Ms. Hillar retaliated against her by changing her prior Feb 2017 evaluation scores for attendance to negative 25 without her knowledge.[29] Ms. Lewis received evaluations from Ms. Hillar in June 2014, December 2014, and December 2015. In no other evaluations Ms. Lewis received from Ms. Hillar does the evaluation audit history show Ms.

---

[26] *Exhibit E page 6 - Feb 2017 Performance Evaluation /Review*
[27] *Exhibit C page 3 – Written Counseling April 2017*
[28] *Exhibit C page 4 - Written Counseling May 2017*
[29] *Exhibit E page 5 - Feb 2017 Performance Evaluation /Review*

Hillar went back in and made changes or "updates" to the evaluations. Ms. Lewis does not believe there is any other rational explanation for why Ms. Hillar would keep going back to update an existing evaluation except that it was purely retaliatory to create a pattern of documentation to justify a reason to terminate Ms. Lewis. Plaintiff has been retaliated against and subjected to unequal terms and conditions of employment in violation of Title VII of the Civil Rights Act of 1964, as amended and the American's with Disabilities Act.

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 12101
### American with Disabilities Act of 1990 (ADA)

25. Plaintiff incorporates by reference each and every paragraph of the Factual Background above and allegations stated in this Original Complaint as if fully pleaded at length herein.

26. If an employee intends to assert an ADA discrimination claim, the employee must be able to allege truthfully: (1) that he has a disability that meets the definition of "disability" in the ADA; (2) that the defendant has discriminated against him by preventing him from taking part in the services offered by that defendant; and (3) that the defendant has discriminated against her/him because of his disability. *Melton v. Dallas Area Rapid Transit, 391 F.3d 669, 671-72 (5th Cir. 2004).* The facts alleged in plaintiff's factual background paragraphs 8 through 24 give rise to the elements listed in Plaintiffs first claim for relief.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 2000e**
**Title VII of the Civil Rights Acts of 1964, as amended**

27. Plaintiff incorporates by reference each and every paragraph of the Factual Background above and allegations stated in this Original Complaint as if fully pleaded at length herein.

28. Plaintiff can establish a prima facie case of retaliation and wrongful termination. Plaintiff is able to allege truthfully (1) that she engaged in a statutorily protected activity and reported the discriminatory treatment. (2) that an adverse action was taken against her on more than one occasion after she reported the discriminatory behavior. (*multiple write-ups contrary to company policy without proper documentation, termination w/o valid documentation to justify a valid reason under any company policy, altering of a prior evaluation, etc.*) (3) and that a causal connection exists between the protected activity and the adverse action. The facts alleged in plaintiff's factual background paragraphs 8 through 24 give rise to the elements listed in Plaintiff's second claim for relief.

29. This is an action for damages arising out of disability discrimination in the making, enforcement performance, modification, and termination of contracts. Plaintiff was denied the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. At all times relevant herein, Plaintiff's job performance was always satisfactory or better and overall evaluations show that plaintiff's job performance scores overall met the expectations of the position and there were no chronic deficiencies warranting termination noted on the last 3 evaluations given just before the on-the-job injury occurred March 2015.

30. Defendants, as alleged herein, discriminated against Plaintiff as follows: denial of a reasonable accommodation due to a disability and Defendant did not apply its policy consistently with regard to discipline for calling in, expired certification, attendance tardies due to missed punches, and evaluations.

31. As a result of the discrimination as described herein, Plaintiff has suffered financial hardship and emotional distress because Defendant and its agents or representatives have subjected her to disparate treatment on account of disability and subjected her to unequal terms and conditions of employment. Plaintiff is informed and believes that Defendants discriminated against her knowingly and with reckless disregard in that even while plaintiff was suffering from seizures and knew she had seizures, defendant tried to allege she was under the influence of drugs or alcohol at work. Defendant knew or should have known that such discrimination would cause severe emotional distress. Plaintiff felt betrayed and isolated as if she were treated differently because of her disability. Therefore, plaintiff seeks damages for such emotional distress in an amount to be proved at the time of trial.

32. Because of the wrongful acts of Defendants as alleged herein, Plaintiff has been and will be required to employ physicians to examine, treat and care for her and will incur additional medical and economic damages in an amount to be proven at the time of trial.

33. As a result of the wrongful conduct resulting in plaintiff's termination by Ms. Hillar as described herein, Plaintiff has been denied reasonable accommodations to continue her employment and denied the opportunity to retire. Plaintiff was three (3) years form having 20 years employed with the defendant. Plaintiff has been denied a right to be a productive

contributor to the employer, denied promotions, and denied raises. As a result, Plaintiff seeks an award of back pay, front pay, and injunctive relief, according to proof at time of trial.

34. In doing the acts set forth above, Defendants acted intentionally, and with a conscious disregard of Plaintiff's right to equal employment opportunities regardless of disability. Defendants have acted, and continue to act, with a reckless disregard of their obligations under the law. The Defendants' conduct, as alleged herein, was and still is shameful and unjust. The Plaintiff is therefore entitled to an award of punitive damages in an amount to be proven at the time of trial.

**DEMAND FOR JURY TRIAL**

35. Plaintiff hereby requests a jury trial for all claims.

**PRAYER FOR RELIEF**

36. Wherefore, Plaintiff prays that the Court grant him the following relief:

37. Compensatory damages;

38. Back pay including lost wages and benefits that would have been paid from the date of the discriminatory act until the trial date;

39. Front pay including future bonuses, lost earnings and benefits;

40. Damages for mental pain and suffering;

41. Reasonable attorneys' fees;

42. Costs of suit;

43. Punitive damages;

44. Injunctive relief;

45. All other and further relief to which Plaintiff may show himself justly entitled.

           Respectfully submitted,
           The Ford 4 Justice Law Firm, PLLC

           */s/ Theressa F. Ford*
           _____

           State Bar No. 24100092
           Federal I.D. No. 3027971
           2616 S. Loop West Suite 100-B
           Houston, Texas 77054
           Phone: (832) 778-8182
           Fax:    (832) 778- 8353
           tford@ford4justice.com
           Attorney for Plaintiff Terry D. Lewis