UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TERRY D. LEWIS, | § | |
| Plaintiff | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:18-CV-02372 |
| HARRIS HEALTH SYSTEM, | § | |
| Defendant | § | |

**DEFENDANT HARRIS HEALTH SYSTEM'S MOTION FOR
SUMMARY JUDGMENT ON THE MERITS**

TO THE HONORABLE JUDGE OF THE COURT:

Defendant Harris Health System files this Motion to for Summary Judgment on the Merits and asks the court to grant Defendant's motion because, there are no genuine issues of material facts, and Defendant is entitled to summary judgment as a matter of law.

## I.      NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed her Original Complaint on July 10, 2018.  Defendant filed its Answer to Plaintiff's Original Complaint on September 21, 2018, after service of Plaintiff's Original Complaint. Discovery between the parties has been exchanged, and the discovery deadline of April 26, 2019, has passed.  Defendant files this Motion for Summary Judgment on the Merits within the dispositive motions deadline of June 10, 2019.

## II.      SUMMARY OF FACTS AND ARGUMENT

Plaintiff, Terry Lewis ("Lewis" or "Plaintiff") has brought claims against Harris Health System ("Harris Health" or "Defendant") for discrimination under the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, and under 42 U.S.C. § 2000e, Title VII of the Civil Rights Act of 1964, as amended, claiming retaliation and wrongful termination.  (Doc. 1, Plaintiff's Original Complaint).  Lewis worked at Harris Health as a psychiatric technician from 1999 to October 4, 2017 when she was terminated for violation of Harris Health Attendance and

Absence Management policy 6.13.   *See* Exhibit A (Lewis Depo. p. 197-198; Lewis Depo. Ex. 29); *See* Exhibit D (Hiller Aff. para. 12).  Harris Health is entitled to summary judgment because Plaintiff cannot establish a prima facie case of disability discrimination, retaliation, failure to accommodate or Title VII discrimination.  Instead, there is ample evidence in the record that Lewis was terminated for a legitimate, non-discriminatory reason, namely, her failure to comply with timekeeping requirements as mandated by Harris Health policies; specifically, Harris Health Attendance and Absence Management policy 6.13.

## III.    SUMMARY JUDGMENT PROOF

In support of its motion, Defendant relies on the pleadings on file and the attached evidence, which is incorporated for all purposes herein as follows:

| | | |
|---|---|---|
| Exhibit A | Lewis Deposition | (Lewis Depo.) |
| | Lewis Deposition Exhibits 1-36 | (Lewis Depo. Ex.) |
| Exhibit B | Job Description dated 5/8/11 | (Job Description) |
| Exhibit C | Certified EEOC Documents 1-70 | (EEOC Doc.) |
| Exhibit D | Affidavit of Marguerite Hiller | (Hiller Aff.) |
| Exhibit E | Affidavit of Janocqua Bradford | (Bradford Aff.) |
| Exhibit F | Affidavit of Miguel Gonzalez | (Gonzalez Aff.) |
| Exhibit G | Affidavit of Robbie Bookman | (Bookman Aff.) |

## IV.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). An issue is material if its resolution could affect the outcome of the action. *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, drawing all justifiable inferences in favor of the party opposing the motions. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court will not weigh the evidence or evaluate the credibility of witnesses. *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir.2002). The movant bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the movant demonstrates there is an absence of evidence to support the nonmovant's case, the nonmovant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. To sustain this burden, the nonmovant cannot rest on the mere allegations of the pleadings. See *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Caboni*, 278 F.3d at 451; Fed.R.Civ.P. 56(e). After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Caboni*, 278 F.3d at 451.

## V.      STATEMENT OF UNCONTROVERTED MATERIAL FACTS

### A.  LEWIS WAS A PSYCHIATRIC TECHNICIAN AT BEN TAUB HOSPITAL

Lewis began working part-time in 1999 as a psychiatric technician at Ben Taub Hospital, which is owned by Harris Health. *See* Exhibit A (Lewis Depo. p. 22-23). She began working full time as a psychiatric technician I in 2000. (Lewis Depo. p. 23-24). She was promoted to a psychiatric technician II in 2012. (Lewis Depo. p. 24). She primarily worked in the clinic area at Ben Taub Hospital. (Lewis Depo. p. 25). As a psychiatric technician II, she supported the care activities of patients with mental or behavioral health problems. (Lewis Depo. p. 26-27; Lewis Depo. Ex. 3). She was required to take vital signs, weigh patients, assist with patients, recognize

and report changes in patients, and respond to emergencies.  (Lewis Depo. p. 27-28; Lewis Depo. Ex. 3).  Physical aspects of her job included lifting, pushing, pulling, bending, stooping, reading, working with machinery, climbing, walking, standing, and sitting.  (Lewis Depo. p. 28; Lewis Depo Ex.3).  She also had sensory responsibilities that included visual and hearing capabilities and use of the computer.  (Lewis Depo. p. 28; Lewis Depo. Ex. 3).  She was required to communicate with patients and nurses as well.  (Lewis Depo. p. 28-29; Lewis Depo. Ex. 3).

### B. HARRIS HEALTH'S ELECTRONIC TIMEKEEPING SYSTEM WAS REQUIRED FOR ALL NON-EXEMPT EMPLOYEES

Harris Health uses an electronic timekeeping system called Kronos that requires employees to badge in, also called "punching in" or "clocking in."  (Lewis Depo. p. 39-40); (Hiller Aff. para. 4).  In accordance with Harris Health policies, it is the employee's responsibility to record their time through the electronic time and attendance system in order to be compensated. (Lewis Depo. p. 43-45; Lewis Depo. Ex. 4); (Hiller Aff. para. 4).  Lewis testified that she was provided with an email dated December 2006 that reflects *effective December 24, 2006, all non-exempt employees will be required to badge out when leaving for a meal period and badge in when returning from a meal period. This requirement is mandatory for all non-exempt employees."*  (Lewis Depo. p. 46; Lewis Depo. Ex. 4).  The email references Harris Health policy 6.15 Employee Supervision and Time Records.  (Lewis Depo. p. 46; Lewis Depo. Ex. 4).  Lewis signed this email.  (Lewis Depo. p. 46; Lewis Depo. Ex. 4).   Lewis testified that her manager at the time informed everyone of this process, and Lewis understood it. (Lewis Depo. p. 46-47). Lewis acknowledged that policy 6.15 states that "*employees who consistently fail to badge in or out will be subject to disciplinary action.*" (Lewis Depo. p. 48); (Hiller Aff. para. 4).  Ms. Hiller, her manager at the time of her termination, also reminded everyone on the unit that frequent tardies, absences, and missed clock-ins would be reprimanded.  (Lewis Depo. p. 232:15-22); (Hiller Aff. para. 6).

As a psychiatric technician II, Lewis was a non-exempt employee who was required to badge in and out. (Hiller Aff. para. 5).   Badging in and out was required for all psychiatric technicians.   (Lewis Depo. p. 42) (Hiller Aff. para. 5).    In addition to badging in and out for lunch, psychiatric technicians had to badge in when they arrived and when they left. (Lewis Depo. p. 42).  The psychiatric technicians were not required to stay on the unit to eat lunch even though it was the practice to do so.  (Lewis Depo. p. 51).  Lewis testified that she chose not to leave the unit to go eat lunch even though some of her coworkers would leave the unit for lunch.  (Lewis Depo. p. 56-57).  She wanted to stay in her area if the doctors or patients needed her. (Lewis Depo. p. 57).  Psychiatric technicians were not supposed to work during their meal period when badged out. (Hiller Aff. para. 8).  Lewis knew she was not supposed to work during lunch. (Lewis Depo. p. 271:19-23).

### C.   LEWIS COULD PERFORM ALL HER JOB DUTIES *EXCEPT* CLOCKING IN AND OUT

According to Lewis, she was able to perform all functions of her job as listed in her job description for the entire time she worked as a psychiatric technician II.  (Lewis Depo. p. 29). She testified that the only issue she had was clocking in and out for lunch, and her coworkers helped remind her.  (Lewis Depo. p. 33).  However, she also testified that it was not just her that had problems clocking in and out for lunch as "they" all did because it was "a short clock time." (Lewis Depo. p. 33).  They only had 30 minutes for lunch. (Lewis Depo. p. 33).  According to Lewis, everyone had a hard time because of the office setting. (Lewis Depo. p. 33).  If the patient or doctor was calling, it would get them "out of track."   (Lewis Depo. p. 34).  There was nothing else that she could not remember to do in relation to her job other than clocking in and out for lunch.  (Lewis Depo. p. 35-36; 139).   Lewis could not say that her inability to remember to clock in and out was solely due to her medical condition as *"it was about me helping the doctor and the patients...then sometimes I will forget."*  (Lewis Depo. p. 139-140).  Lewis testified that the

Harris Health Nursing Staff Scheduling Guidelines policy 380 applied to her as technical staff and reflects that – for meal periods: *"employees shall be required to take at least one 30-minute break during their shift."* (Lewis Depo. p. 73, 75; Lewis Depo. Ex. 7); (Hiller Aff. para. 8).   Lewis testified that she understood that she was not supposed to work during lunch but felt that if she did not get her lunch that it was her choice.  (Lewis Depo. p. 183:21-25 to 184:1-17).

### D.  LEWIS WAS APPROVED FOR INTERMITTENT FMLA LEAVE

Harris Health uses a third party administrator to manage employee leave and disability requests.  (Lewis Depo. p. 15); *See* Exhibit E (Bradford Aff. para. 2).  During some of the time that Lewis was working at Harris Health, the third party administrators for Harris Health were Reed Group and FMLASource. (Lewis  Depo. p. 15); (Bradford Aff. para. 2).  Harris Health has a leave and disability department that oversees employee leave.  (Hiller Aff. para. 9); (Bradford Aff. para. 1). Harris Health managers and supervisors are not provided with employees' medical information, diagnosis, or medical certifications that are received by the third party administrator. (Hiller Aff. para. 9); (Bradford Aff. para. 4).  Harris Health managers and supervisors only receive correspondence from the third party administrator regarding an employee's approval or denial of leave requests.  (Hiller Aff. para. 9); (Bradford Aff. para. 4).

Harris Health had no notice of a request for an accommodation under the ADA or ADAA for Lewis from 2013 to 2017.  (Bradford Aff. para. 6).   Over the years that Lewis worked for Harris Health, she requested and was approved for FMLA.  (Lewis Depo. p. 114-115).  From 2013 to 2017, Lewis was granted intermittent FMLA for several conditions.  In 2013, she was approved for intermittent leave for intermittent panic attacks. (Lewis Depo. p. 117-118; Lewis Depo. Ex. 13).  The medical certification documentation reflects that Lewis was unable to attend work during an exacerbation, meaning she could work unless she was having a panic attack. (Lewis Depo. p. 118; Lewis Depo. Ex. 13).  In 2014, Lewis was granted intermittent leave for

depression and panic disorder.  (Lewis Depo p. 120-121; Lewis Depo. Ex. 14).  The medical certification documentation from her physician reflects that Lewis could perform the essential functions of her job but was unable to attend [work] during episodes of depression and panic disorder.  (Lewis Depo p. 120-121; Lewis Depo. Ex. 14).

In 2015 and 2016, Lewis was again approved for intermittent leave for panic disorder and depression that caused intermittent flare ups reflecting that she could not attend work during these episodes.  (Lewis Depo p. 121-123; Lewis Depo. Ex. 15 and 16).  In 2016, Lewis was approved for intermittent leave for *"seizure with abnormal 72 hour ambulatory EEG"* and *"seizure."* (Lewis Depo p. 126-127; Lewis Depo. Ex. 17).  The medical certification documentation reflects that Lewis was unable to perform her job functions *"only when she has a seizure otherwise she can perform her duties."*  (Lewis Depo p. 126-127; Lewis Depo. Ex. 17).  Lewis testified that she was able to perform her job duties as long as she did not have a seizure.  (Lewis Depo p. 127). Lewis could not recall how often she had seizures.  (Lewis Depo p. 127).  Lewis recalled having a seizure at work one time.  (Lewis Depo p. 133).  Lewis has depression, but she testified that condition did not prevent her from being able to do her job duties.  (Lewis Depo. p. 135:10-17). Lewis never had an episode of panic disorder at work.  (Lewis Depo. p. 136:9-18).

None of the medical certifications 2013 to 2017 provided by Lewis' physicians to Harris Health's third party administrator reflect that Lewis had any restrictions on her ability to work or that she needed any type of accommodation.  (Lewis Depo. Ex. 13, 14, 15, 16, 17).  The medical certifications provided from 2013 to 2017 reflect that Lewis be off work for flare ups of her conditions and off work for doctor visits.  (Lewis Depo. Ex. 13, 14, 15, 16, 17).  Lewis testified that the only thing she needed as an accommodation was for her coworkers to help her stay focused to clock in and out, which they did.  (Lewis Depo p. 138-139).  Lewis initially testified that she asked her manager, Ms. Hiller, for an accommodation with respect to badging in and out

for meal periods one day when Ms. Hiller said she had slurred speech.  (Lewis Depo p. 146-147).

Ms. Hiller allowed her to leave when that happened as she had been approved for intermittent

leave.  (Lewis Depo p. 147-148).  When asked if Lewis told Ms. Hiller she could not remember to

badge in and out because of her slurred speech, Lewis testified:

> *Q. Okay.  Did you ever go up to her and tell her that you can't remember to badge in and out because of your slurred speech?*
>
> *A. Yes.*
>
> *Q. Okay. When did you do that?*
>
> *A. Not about my slurred speech. I had told her the reason why, I'd be with the doctor or patient. Sometimes I just forgot. If I'm involved with the patient, I mean mostly - - most all the time, it would be somebody distract me and then I forget, period. I'll be working at that time.*
>
> *Q. So you told her the reason why you weren't remembering was because you were distracted by doing other things, correct?*
>
> *A. Yes, ma'am.*
>
> *Q. Did you ever tell her it was due to your medical condition?*
>
> *A. Yes, ma'am.*
>
> *Q. Okay.*
>
> *A. She was aware.*
>
> *Q. Okay. How was she aware of that?*
>
> *A. Besides the paperwork that the doctors and them give them, they cc'd Ms. Hiller my problems and I verbally told them I'm  - - Ms. T, who's the nurse of the clinic, also had told her 'cause I guess she was talking to Ms. T about when it comes to..[1].*

(Lewis Depo p. 148-149).

---

[1] Lewis testified that "Ms. T" is Wicklynne Travillion, a coworker.  (Lewis Depo p. 149:8-11).

Lewis confirmed that she never asked for an accommodation.  She testified that:

*Q. ...You never asked Ms. Hiller for an accommodation to punch –
to the – with respect to punching in and out, correct?*

*A. Well, no, I thought I was going to do better. You know, I – by me
having co-workers, team power that I was doing better...*

(Lewis Depo. p. 223:4-11)

Again, none of the medical certifications reflect that Lewis required an accommodation for her job in order to be able to remember to clock in and out or for any other function.   All her medical certifications from 2013 to 2017 reflect that Lewis could perform her job functions and was only unable to perform her job functions if she had a seizure.  Lewis' supervisor, Ms. Hiller, was not provided with any documentation regarding Lewis' specific medical condition or diagnosis.   (Hiller Aff. para. 9-11); (Bradford Aff. para. 5).   Ms. Hiller only received correspondence from Harris Health's third party administrators regarding Lewis' leave requests pertaining to approvals or denials of those requests.  (Hiller Aff. para. 10); (Bradford Aff. para. 5).  Ms. Hiller was never told by Lewis or anyone else that Lewis suffered from any medical condition including seizure, epilepsy, depression, or panic disorder. (Hiller Aff. para. 11).

### E. LEWIS WAS TERMINATED FOR VIOLATION OF HARRIS HEALTH'S ATTENDANCE AND ABSENCE MANAGEMENT POLICY 6.13

Prior to her termination in October 2017, Lewis received multiple counselings related to her failure to comply with Harris Health Attendance and Absence Management policy 6.13. (Lewis Depo. Ex. 21, 22, 23, 24, 25); (Hiller Aff. para. 12-13). On March 17, 2016 and March 8, 2017, Lewis was counseled for failure to comply with policy 6.13 for improper notifications.[2] (Lewis Depo p. 153-154; Lewis Depo. Ex. 21, 22).   The Nursing Staff Scheduling Guidelines policy 380 applied to her as a psychiatric technician and reflects she had to notify the designated

---

[2] In accordance with Harris Health's Family and Medical Leave of Absence policy 6.29, notice must be given in accordance with the normal absence call-in policy.  (Lewis Depo. Ex. 6).  Lewis understood that.  (Lewis  Depo. p. 63-64).  She also understood that she had to call in according to departmental policy guidelines.  (Lewis Depo. p. 64-65).

individual no less than four hours prior to a scheduled shift if unable to work. (Lewis Depo. p. 64-65, 72-75; Lewis Depo. Ex. 7). According to the Attendance and Absence policy 6.13, failure to follow departmental notification guidelines for unscheduled absences constitutes an attendance infraction. (Lewis Depo. p. 64-65; Lewis Depo. Ex 5). Lewis disagreed with the counselings that she gave improper notice and the documentation attached to the counselings but does not recall what time she called in on the dates she was counseled for improper notifications. (Lewis Depo. p. 155:16-22; 157:9-13).

Harris Health Attendance and Absence Management policy 6.13 reflects that a "missed punch" is a failure to badge-in at the start or end of the shift or at the start or end of a lunch break, and a missed punch <u>shall be</u> treated as a tardy for purposes of the policy, which Lewis understood. (Lewis Depo. p. 65-66; Lewis Depo. Ex 5 p. 2); (Hiller Aff. para. 12). This is something that her supervisors discussed with her and other staff members. (Lewis Depo. p. 65); (Hiller Aff. para.6). If employees failed to punch in or out, it was considered a tardy, and they had to correct their time on a separate form. (Lewis Depo. p. 66). Policy 6.13 also reflects that employees must *"take the authorized time for meal periods and breaks and work the assigned shift and badge out as scheduled unless required to work a longer shift by the supervisor."* (Lewis Depo. p. 66-67; Lewis Depo. Ex 5 p. 2-3).

Lewis agreed that policy 6.13 states that each tardy counts as one occurrence and an employee can have no more than two final written warnings of any type in any rolling 12 month period. (Lewis Depo. p. 68; Lewis Depo. Ex. 5 p. 4). Lewis also agreed that the policy states that additional occurrences that cause a third final written warning in a rolling 12 month period shall be grounds for termination. (Lewis Depo. p. 68; Lewis Depo. Ex. 5 p. 4). Policy 6.13 requires that the supervisor monitor the employee's attendance and address unacceptable attendance. (Lewis Depo. Ex. 5). Corrective actions shall be based on the number of occurrences that an

employee has in a rolling twelve-month period. (Lewis Depo.  Ex. 5).  Policy 6.13 reflects that

Corrective Actions for tardies are as follows:

| TARDIES | |
|---|---|
| OCCURRENCES | CORRECTIVE ACTION |
| 1 through 5 | Coaching as needed |
| 6 | 1st Written Warning |
| 7 | 2nd Written Warning |
| 8 | Final Written Warning |
| 9 | Termination |

(Lewis Depo. p. 69; Lewis Depo. Ex. 5 p. 5).  Lewis understood this at the time she worked at

Harris Health.  (Lewis Depo. p. 69; Lewis Depo. Ex. 5 p. 5).   Lewis received the following

counselings in accordance with policy 6.13:

- April 7, 2017 – Written Counseling for failure to comply with policy 6.13 – Missed punch. Failure to badge in and the start or end of the shift or at the start or end of a lunch break - 14 missed badges

- May 31, 2017 – 2nd Written Counseling for failure to comply with policy 6.13 – Missed punch. Failure to badge in and the start or end of the shift or at the start or end of a lunch break – 14 tardy occasion/missed clocked

- August 7, 2017 – Final Written Counseling for failure to comply with policy 6.13 – Missed punch. Failure to badge in and the start or end of the shift or at the start or end of a lunch break – 15 tardy occasion/missed clocked.

- October 4, 2017 – Termination for failure to comply with policy 6.13 – Missed Punch.   Failure to badge in and the start or end of the shift or at the start or end of a lunch break – 13 tardy/missed clocked infractions in a rolling 12 month period.[3]

(Lewis Depo. Ex. 23, 24, 25, 29); (Hiller Aff. para. 13).

Lewis was terminated in accordance with policy 6.13. (Hiller Aff. para. 12).  Lewis

disagreed that she had 13 missed punches for the 12 month period from October 2016 to

September 2017 but does not really know because she claims she never got the backup

documentation attached to the counselings.  (Lewis Depo. p. 198:12-17).   However, she agreed

---

[3] The termination reflects Lewis received a Coaching January 2017; 1st Written April 7, 2017; 2nd Written May 31, 2017; and Final Written August 7, 2017, in accordance with policy 6.13.

she had access to Kronos to see her missed punches.  (Lewis Depo. p. 199:8-21).   Despite Lewis'

recollection, Lewis was provided with all the backup documentation attached to her counselings

and termination at the time of the counseling.  (Hiller Aff. para. 14).

### F. LEWIS NEVER MADE A REPORT OR COMPLAINT OF DISCRIMINATION

Harris Health has a policy that allows employees to grieve their terminations.  (Lewis

Depo. p. 208:25).  Lewis did that with respect to her termination. (Lewis Depo. 209:1-7). On her

grievance request form, she was asked to describe her concerns and the policies violated and she

noted only that *"Ms. Hiller ask me to come to Mr. William David. She stated to me & Will ER she*

*do correction on my time clocking.  She ask give her close-out form.  I didn't know what she it for*

*stated. Just do it.  On 9/28/17 I clock out twice. I stated she did not need to correct any time it was*

*okay."*  (Lewis Depo. p. 209:21 to 210:1-12; Lewis Depo. Ex. 30).  Lewis testified that she did

not state on her grievance request any instances of alleged discrimination.  (Lewis Depo. p.

209:21 to p. 210:1-12; Lewis Depo. Ex. 30).

Lewis alleges Ms. Hiller was bullying her because she made her get drug tested.  (Lewis

Depo. p. 211:22-25; p. 212:1-25; p. 102:1-25 to 103:1-14).  Lewis was aware Harris Health had a

drug testing policy and had no problem with it. (Lewis Depo. p. 103:7-10).  Lewis was drug tested

at the direction of Harris Health Human Resources. (Lewis Depo. Ex. 12 p. 0092).  Lewis also

believed Ms. Hiller was harassing her by counseling her for not providing an updated licensure

and certification for her job. (Lewis Depo. p. 186:11-25 to 187; Lewis Depo. Ex. 26).  Lewis was

counseled in accordance with policy 6.33. (Hiller Aff. para. 2). Harris Health policy 6.33

Licensure and Certification Registration states: *"you must maintain credentials to perform your*

*functions....directors are responsible for ensuring all employees have the required credentials to*

*perform the duties of their assigned jobs...they must suspend for a period not to exceed five days*

*current employees who fail to provide evidence of renewal of required credentials on or before*

*the expiration date."* (Lewis Depo. p. 189:15-25 to 190:1-24; Lewis Depo. Ex. 28); (Hiller Aff. para. 3). Lewis' current Job Description requires her to be certified. (Lewis Depo. Ex. 3); (Hiller Aff. para. 2). Additionally, at the time she became a psychiatric technician II in 2012, she was required to be certified. (Hiller Aff. para. 2); *See* Exhibit B (Job Description for Psychiatric Technician II dated 5/8/11).

In August 2017, Lewis testified that she called the Harris Health Corporate Compliance Hotline to make a complaint in accordance with Harris Health Non-discrimination policy 6.19 that requires employees to report discrimination. (Lewis Depo. p. 214:18-25 to p.215:1-25; Lewis Depo. Ex. 31 and 32). However, she did not claim any discrimination in her report to the Hotline. She reported that Ms. Hiller had been "bullying" her for four months prior to August 2017. (Lewis Depo. p. 216:24 to p. 217:1-21; Lewis Depo. Ex. 32). Specifically, Lewis reported four instances that she claimed constituted bullying: (1) someone handed her some items to select a color for a doctor's office and Ms. Hiller snatched them out of her hands; (2) Ms. Hiller called her on someone else's phone to speak to her about a human resources related issue; (3) she received a corrective action because she forgot to clock in for a training class; and (4) she was required to have drug testing. (Lewis Depo. p. 217:22 to p. 218:1-25; Lewis Depo. Ex. 32). Lewis testified that she did not, at any time, make a complaint that Ms. Hiller was discriminating against her. (Lewis Depo. p. 220:22-25 to p. 221:1-6; Lewis Depo. Ex. 32). The resolution of the complaint made by Lewis was *"Unsubstantiated. HR Business Partner, Pat Moore investigated the allegation. No instances of bullying were identified. Ms. Lewis was terminated on 10-4-17 due to policy 6.13 attendance for being excessively tardy."* (Lewis Depo. p. 222:3-9; Lewis Depo. Ex. 32).

Lewis filed for unemployment with the Texas Workforce Commission and had a hearing over the phone. (Lewis Depo. p. 229:1-9). The fact finding document from the Texas Workforce

Commission reflects that Lewis stated that the reason her employer fired her was *"for failing to clock in/out as scheduled. I understand the final incident was I forgot to clock out 092017."* It was noted that the reason she could not remember to clock in or out as scheduled was *"b/c I forgot or got busy." See* Exhibit C (EEOC Doc. p. 22). She understood that the policy of missed punches shall be counted as documented tardies and the policy was provided at the time of hire. (EEOC Doc. p. 22) It was noted that Lewis was on a final written warning at the time of separation and that the policy was followed because *"after so many warnings, the next step is termination."* (EEOC Doc. p. 22). Lewis appealed the Texas Workforce Commission's determination dated October 30, 2017 and noted her reason for appealing was because she *"mispunch [illegible] based on my lunch well we don't have areas [illegible] to eat. Doctors or patient can come to your assistant."* (EEOC  Doc. p. 38). The Texas Workforce Commission records contain no report from Lewis that she was discriminated against or that she was not able to clock in or out because of a disability.

## VI.    DISABILITY DISCRIMINATION

### A.  LEWIS CANNOT ESTABLISH A PRIMA FACIE CASE FOR DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

The ADA prohibits an employer from discriminating against a "qualified individual with a disability on the basis of that disability." 42 U.S.C. § 12112(a). In a discriminatory-termination action under the ADA, the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII case. *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013). This analysis first requires the Plaintiff to establish a prima facie case of discrimination. See *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). If Lewis is successful, then Harris Health must articulate a legitimate, nondiscriminatory reason

for terminating her. *See Id.*  Finally, the burden shifts back to the Lewis to show that Harris

Health's proffered reason is pretextual. *See Id.*

The issue in the case is whether Harris Health violated the ADA when it terminated

Lewis' employment on October 4, 2017.  To establish a prima facie case under the ADA,

plaintiff must prove that (1) that she has a disability; (2) that she was a qualified for the job; and

(3) that she was subject to an adverse employment decision on account of her disability. *E.E.O.C*

*v. LHC Grp., Inc.*, 773 F.3d 688, 695 (5th Cir. 2014).  There is no necessity for comparators

under this test.[4] *Weed v. Sidewinder Drilling, Inc.,* 245 F. Supp. 3d 826, 837 (S.D. Tex. 2017)

(citing *E.E.O.C v. LHC Grp., Inc.*, 773 F.3d 688, 695 (5th Cir. 2014)).  Harris Health is entitled

to judgment as a matter of law because plaintiff cannot provide evidence for all of the elements

of a prima facie case under the ADA.

### (1) Lewis Cannot Establish Element One of Prima Facie Case – Plaintiff is not Disabled

Plaintiff cannot show that she suffers from a disability and, thus, fails to establish the first

element of her prima facie case.  Lewis was not disabled so as to come within the protection of

the ADA. "Disability" as used in the ADA means: "(A) a physical or mental impairment that

substantially limits one or more of the major life activities of such individual; (B) a record of

such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §

12102(2).  Consideration of a claim under subsection A of the definition of disability proceeds in

three steps." *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998);

*Waldrip v. Gen'l Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003). The plaintiff must (1) have a

mental or physical impairment that (2) substantially limits (3) a major life activity. *Id.*

Harris Health does not dispute that Lewis has a condition or conditions that constitute an

---

[4] Even if comparator evidence is required, Plaintiff has provided no evidence of how her coworkers were treated differently. Plaintiff testified that she has not seen any of her coworker's personnel files to know whether they had received write-ups. (Lewis Depo. p. 244:20-24).  She knows what happened to her as far as missed badges, but does not know if her coworkers were counseled for missed badges.  (Lewis Depo. p. 206:23-25 to p. 207:1-11).

impairment within the meaning of the ADA. However, not all impairments are considered disabilities under the statute. To be considered a "disability," an impairment must substantially limit a major life activity. *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 (5th Cir.1995).  The ADA does not define either "substantially limits" or "major life activity," but the EEOC has promulgated regulations under the ADA that define those terms. Whether an impairment is substantially limiting depends on "(1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact." *Id.* (citing 29 C.F.R. § 1630, App., § 1630.2(j)).

Thus, merely having an impairment, however, does not make one disabled for purposes of the ADA.  *E.E.O.C. v. Chevron Phillips Chemical Co., LP,* 570 F.3d 606 (5th Cir. 2009). Plaintiff must demonstrate that the impairment substantially limits a major life activity.  *Id.*  The ADA's implementing regulations provide a non-exhaustive list of major life activities, including "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). Further, the limitation on the major life activity must be "substantial" to be substantially limited means to be unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it. 29 C.F.R. § 1630.2(j).

Lewis claims that she has epilepsy that causes memory loss.  However, Lewis agreed that none of the medical certifications from 2013 to 2017 from Reed Group or FMLASource reflect that she has epilepsy or memory issues. (Lewis Depo. p. 143:15-20). The medical certifications all reflect that she was approved for intermittent FMLA for doctor's appointments or flare-ups of her conditions when she could not attend work.  (Lewis Depo. p. 146:7-13; Lewis Depo. Ex. 13-17, 20).  The Fifth Circuit has held that seizures and/or epilepsy do not constitute a disability per se.  *Allison Deas v. River West, L.P.,* 152 F.3d 471 (5th Cir. 1998); *Lomastro v. Caddo Parish*

*Sheriff*, No. CV 05-320, 2006 WL 1805875 at 3-4 (W.D.La. June 29, 2006).   Likewise, a

diagnosis of depression and panic disorder does not alone establish a disability.   *Trevino v.*

*United Parcel Service,* No. 3:08-CV-0889-B, 2009 WL 3199185, at 7 (N.D.Tex. Oct. 5, 2009);

*Richard v. Dupont Co.*, 396 Fed. App'x 168, 169 (5th Cir. 2010); *Thibodeaux v. Dow Chemical*

*Co.*, CIVA 16-00567-BAJ-RLB, 2018 WL 2269906 at 8 (M.D.La. May 17, 2018).

     The determination of whether an individual has a disability is not necessarily based on

the name or diagnosis of the impairment the person has, but rather on the effect of that

impairment on the life of the individual.   *Deas*, 152 F.3d at 478.   In *Lomastro*, the plaintiff tried

to argue that his seizures constitute epilepsy and that epilepsy is a disability per se.   *Lomastro,*

No. CV 05-320, 2006 WL 1805875 at 3.   The Court stated that:

> "A person with epilepsy can certainly be disabled under the ADA. Indeed,
> epilepsy is one of the disabling conditions that Congress contemplated when it
> passed the ADA. The analysis does not stop at this level of generality, however.
> The determination of whether a person is disabled is an individualized inquiry,
> particular to the facts of each case. Thus, the crucial question in this case is
> whether [plaintiff's] epilepsy substantially limited one of her major life
> activities."

*Id. at 4 (citing EEOC v. Sara Lee Corp.,* 237 F.3d 349, 352 (4th Cir. 2001); *Deas v. River West,*

152 F.3d 471 (5th Cir.1998).   The Court held that, since Lomastro had not submitted competent

summary judgment evidence that his seizures substantially limited any of his major life

activities, his record of such seizures did not constitute a record of a "disability." *See Blanks v.*

*Southwestern Bell Communications, Inc.,* 310 F.3d 398 (5th Cir. 2002). Thus, the court found

that Lomastro failed to show that he was disabled under the ADA.   *Id. at 4.*

     Other than Lewis' statement that she is disabled, she has provided no evidence that she is

disabled.   To qualify as a disability based on a diagnosis of seizure, epilepsy, depression, or

panic disorder, Lewis must show that one or more of these conditions *substantially limited* a

major life activity such as caring for herself, performing tasks, walking, seeing, hearing,

speaking, breathing, working.  However, Lewis had no restrictions on her ability to perform her job duties at the time of her termination or at any time from 2013 to her termination (Lewis Depo. Ex. 13-17, 20).  Specifically, her medical certification for *"seizure w/ an abn 72 hr ambulatory EEG"* reflects that she was unable to perform her job functions *"only when she has a seizure otherwise she can perform her duties"* and that she *"suffers from seizures and intermittently will need to leave work."*  (Lewis Depo. Ex. 17).  For depression and panic disorder, the medical certification reflects that she was unable to attend work during exacerbations.  (Lewis Depo. Ex. 20).  Likewise, Lewis testified that she could perform all functions of her job as a psych tech.  (Lewis Depo. p. 239:15-18).  She also testified that she was able to take care of herself, bathe, feed herself, walk and talk.  (Lewis Depo. p.237:19-25 to p. 238:1-20).  The only thing she does not do anymore is drive because she has gotten lost. (Lewis Depo. p. 238:21-25 to p. 239:1-5).  Accordingly, Ms. Lewis did not have a mental or physical impairment that substantially limited a major life activity.

### (2) Lewis Cannot Establish Element Two of Prima Facie Case – Plaintiff was not Qualified because of Her Inability to Remember to Badge In and Out

"The term 'qualified individual with a disability' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); see also 29 C.F.R. § 1630.2(m) ("Qualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position."). To avoid summary judgment on whether she is a qualified individual, Lewis needs to show: (1) that she could perform the essential functions of the job in spite of her disability or (2) that a reasonable accommodation of her disability would have enabled her to perform the essential functions of the

job." *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993).

To determine whether a plaintiff is otherwise qualified for a given job, the court must conduct a two part inquiry.  First, it must determine whether the plaintiff could perform the essential functions of a job, i.e. functions that bear more than a marginal relationship to the job at issue. *Chandler v. City of Dallas*, 2 F.3d 1385, 1393-94 (5th Cir. 1993). Second, if the court finds that the plaintiff is not able to perform the essential functions of a job, it must determine whether any reasonable accommodation by the employer would enable her to perform those job functions. *Id.*

Harris Health contends that Lewis was not qualified for the position of psychiatric technician because she could not remember to badge in and out.  Lewis acknowledged that Harris Health policies required her to badge in and out. (Lewis Depo. p. 50:2-6).  She acknowledged that the Nursing Staff Scheduling Guidelines applied to her as a psychiatric technician and mandated that employees take a meal period of at least a 30 minute break during their shift.  (Lewis Depo. p. 75:5-21; Lewis Depo. Ex. 7 p. 4).  Lewis admitted that the only thing she could not remember to do is to badge in and out for lunch and did not have memory issues relating to any of her other job functions. (Lewis Depo. p. 139-140).  Specifically, Lewis testified that she could not remember to badge in and out because she wanted to help the doctors and patients. (Lewis Depo. p. 139-140).  Lewis stated that she would get distracted or be asked to work during her lunch hour, which she knew she was prohibited from doing. (Lewis Depo p. 148:4-18).   Lewis could not point to any evidence or provide any testimony that supports that her failures to badge in or out were related to her medical conditions of seizure, panic disorder, or depression. (Lewis Depo. p. 141:4-7). The ADA requires employers to accommodate disabilities – not general work deficiencies that have no connection to an employee's physical infirmity.  *See Bowers v. Bethany Medical Center*, 959 F. Supp. 1385 (D. Kansas, 1997).   An

employee cannot hide behind the ADA and avoid accountability for their actions.  *Hamilton v. Southwestern Bell Tel. Co.*, 136 F.3d 1047, 1052 (5th Cir. 1998).

### (3) *Lewis Cannot Establish Element Three of a Prima Facie Case – Plaintiff cannot establish that She Suffered an Adverse Employment Action because of her Disability*

Lewis has not provided any evidence that she was terminated due to her disability.  Rather, it is clear that there was a legitimate nondiscriminatory reason for her termination.  To prevail on her claim, Lewis must establish a "nexus" linking her termination to her disability.  *E.E.O.C v. LHC Grp., Inc.*, 773 F.3d 688, 695 (5th Cir. 2014).  Specifically, Lewis must show that the adverse employment decision was "on account of" her disability, which  Lewis has failed to do.  *Id.*  Lewis was terminated for failure to comply with Harris Health Attendance and Absence Management policy 6.13 as evidenced by her termination document. (Lewis Depo. Ex. 29); (Hiller Aff. para 12).  Lewis confirmed that, according to Harris Health Attendance and Absence Management policy 6.13, nine occurrences of tardies in a rolling 12 month period equal termination.  (Lewis Depo. p. 202:6-14; Lewis Depo Ex. 5).  However, she disagreed that she had 13 tardies and missed clock ins during the time period of October 5, 2016 to September 20, 2017. (Lewis Depo. p. 201:5-11). Harris Health counseled Lewis on each occasion for her missed badges, and the counselings and missed badges were reviewed and discussed with her. (Hiller Aff. para 14).  Lewis was provided the backup documentation reflecting the missed badges for the time periods in question. (Hiller Aff. para. 14).  Furthermore, Lewis, by her own admission, confirmed in her grievance request form and to the Texas Workforce Commission that she was terminated for failure to comply with Harris Health Attendance and Absence Management policy 6.13. Thus, Lewis has not provided any evidence that she was terminated on account of her disability other than her own subjective belief and speculation.

**B.   LEWIS CANNOT ESTABLISH A PRIMA FACIE CASE OF FAILURE TO ACCOMMODATE**

The ADA requires an employer to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.  *Delaval v. PTech Drilling Tubulars, LLC.*, 824 F.3d 476, 481 (5th Cir. 2016). To prevail on a failure to accommodate claim, the plaintiff must show that: (1) she is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. Louisiana Dept. of Justice, Office of the Attorney General*, 730 F.3d 450, 452 (5th Cir. 2013).

As set forth above, Lewis has failed to establish that she is a qualified individual with a disability.  However, even if she is, her "disability" and her "limitations" that claims she had, her ability to remember to badge in and out, was a limitation that was not known to Harris Health. (Hiller Aff. para 9-11). The Fifth Circuit has recognized that, where the disability, resulting limitations, and necessary reasonable accommodations, are not *open, obvious, and apparent to the employer,* the initial burden rests primarily upon the employee to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations. *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 444 (5th Cir. 2017) (citing *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009).  Once this is accomplished, an employer must engage in the "interactive process," or a flexible dialogue, with the employee with the goal of finding an appropriate accommodation for the limitation. *Chevron Phillips*, 570 F.3d at 621.

Given that Lewis' impairment and suggested disability was not open and obvious, Lewis had a duty to identify her disability to Harris Health and request an accommodation.   However, she did not do so.  Any knowledge Lewis' coworkers had regarding her medical conditions did not impute to Harris Health.  Furthermore, Lewis never asked for an accommodation.  (Lewis

Depo. p. 223:4-11); (Hiller Aff. para. 11); (Bradford Aff. para. 6).   When asked what accommodation she asked for with respect to punching in and out for lunch she said, *"I didn't ask for nothing...."*   (Lewis Depo. p. 242:17-19).   Thus, to the extent Harris Health did not engage in the interactive process with Lewis, it was due to her failure to identify a disability and request an accommodation.   Furthermore, because Lewis has not established that she was substantially limited in a major life activity, Harris Health had no duty to make a reasonable accommodation.  *See Richard,* 396 Fed. App'x at 169.

### C.  LEWIS CANNOT ESTABLISH A PRIMA FACIE CASE OF RETALIATION

To establish a prima facie case of retaliation under the ADA or Title VII, a plaintiff must show that: (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action. *McCoy v. City of Shreveport,* 492 F.3d 551, 556–57 (5th Cir.2007) (Title VII); *Seaman v. CSPH, Inc.,* 179 F.3d 297, 301 (5th Cir.1999) (ADA). "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation," *LeMaire v. Louisiana,* 480 F.3d 383, 388–89 (5th Cir.2007) (which the employee accomplishes by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive); *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 360, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013) (Title VII); *Seaman,* 179 F.3d at 301 (ADA). In order to avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Long v. Eastfield College,* 88 F.3d 300, 308 (5th Cir.1996).

According to the Fifth Circuit, under the ADA, "protected activity" includes opposing

employment actions or practices that are unlawful under the ADA." *Gordon v. Acosta Sales &
Mktg., Inc.*, 622 Fed.Appx. 426, 431 (5th Cir. 2015) (citing 2 AMERICANS WITH
DISABILITIES: PRACTICE & COMPLIANCE MANUAL § 7:398 (2015)). Courts have
recognized this includes filing charges with the EEOC alleging "discrimination on the basis of
perceived disability." *Id.*; *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).
However, when employees make complaints about harassment without connecting the
employment practices to their disabilities, these complaints do not constitute protected activity.
*See Harris–Childs v. Medco Health Solutions, Inc.*, 169 Fed.Appx. 913, 916 (5th Cir.2006)
(finding that the Appellant had not engaged in a protected activity, even though she complained
of unfair treatment/harassment, because she did not demonstrate that she "put the employer on
notice that her complaint was based on racial or sexual discrimination"). *Gordon v. Acosta Sales
& Mktg., Inc.*, 622 Fed.Appx. 426, 431 (5th Cir. 2015).   Therefore, the relevant question is not
whether a formal accusation of discrimination is made but whether the employee's
communications to the employer sufficiently convey the employee's reasonable concerns that the
employer has acted or is acting in an unlawful discriminatory manner." *Yount v. S & A Rest.
Corp.*, 226 F.3d 641 (5th Cir. 2000).

Lewis cannot establish a prima facie case of retaliation.  She testified that the protected
activity she engaged in was filing a Corporate Compliance complaint.  (Lewis Depo. p. 250:19-
22-25).  However, she also testified that she believed she was going to be terminated "before"
she filed the complaint. (Lewis Depo. p. 250:19-22-25).   Lewis testified that she does not have
any evidence that she was terminated because of her Corporate Compliance complaint.  (Lewis
Depo. p. 251:4-8).  Likewise, although she filed a complaint, her complaint alleged that her
supervisor, Ms. Hiller, had been bullying her and harassing her. (Lewis Depo p. 250:8-25; Lewis
Depo p. 216:1-25 and p. 217:1-5).  Her specific complaints related to picking a doctor's wall

color, being called on a coworker's phone, being counseled for a missed badge, and being drug tested in accordance with Harris Health policy.  (Lewis Depo. p. 217:22 to p. 218:1-25; Lewis Depo. Ex. 32).  None of these complaints are connected in any way to Lewis' alleged disability. In fact, Lewis testified that she did not complain, in this call-in or at any time, that she was being discriminated against.  (Lewis Depo. p. 221:2-6; Lewis Depo. Ex. 32).

### D.  HARRIS HEALTH HAD A LEGITIMATE NON-DISCRIMINATORY REASON FOR TERMINATING LEWIS

Even if Lewis had produced evidence establishing a prima facie case of discrimination, she has failed to present evidence to rebut Harris Health's legitimate, nondiscriminatory reason for terminating her employment – her failure to comply with Harris Health's timekeeping policies and Harris Health Attendance and Absence Management policy 6.13.  The Fifth Circuit has ruled that an employer's termination of an employee for violation of a neutral attendance policy is legitimate.  *See Pedroza v. Autozone, Inc.,* F. Supp. 679, 700 (W.D. Tex. 2008); *Smith v. Lattimore Materials Co.,* 287 F.Supp. 2d 667, 672 (E.D. Tex.), affirmed 77 F.  App'x 729 (5th Cir. 2003); *Roberts v. Mega Life & Health Ins. Co.,* No. 304CV756M, 2005 WL 659026, at *6 (N.D.Tex., March 22, 2005); *see also, Troupe v. Cintas,* No. 3:99CV0193M, 2000 WL 1056327, at *3 (N.D.Tex. July 31, 2000).   Further, failure to comply with timekeeping policies has been held to be a legitimate reason for termination.  *Williams v. Texas Children's Hospital*, 2019 WL 1099067 (S.D. Tex. March 8, 2019).

Lewis was terminated for failure to follow Harris Health Attendance and Absence policy 6.13. (Lewis Depo. p. 29) (Hiller Aff. para. 12).  Lewis' subjective belief that she was terminated because of her disability is not sufficient to support a claim for disability discrimination. *See Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir.1996) ("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a

summary judgment motion....").

## VII.   <u>TITLE VII</u>

Plaintiff's complaint sets forth a cause of action under 42 U.S.C. § 2000e, Title VII of the Civil Rights Act of 1964, as amended.  Under that cause of action, she claims she can establish a prima facie case of *"retaliation and wrongful termination…arising out of disability discrimination."*  (Doc. 1, Plaintiff's Original Complaint p. 13).  Plaintiff has failed to provide any evidence of a Title VII discrimination or retaliation claim.   She testified that her complaint with regards to her Title VII claim is her *"having to –the problem with clocking in and out"* which has no relevance to a Title VII discrimination claim.  (Lewis Depo p. 235).  However, to the extent Plaintiff is claiming retaliation based on her disability, Defendant maintains that Plaintiff cannot establish a prima facie case of retaliation.  *See* Section C. herein.

## VIII.   <u>CONCLUSION</u>

For these reasons, Defendant Harris Health System respectfully requests that the court grant Defendant's Motion for Summary Judgment on the Merits, dismiss with prejudice all of Plaintiff's claims in their entirety, and grant such other and further relief to Defendant which the Court deems just and proper.

Respectfully submitted,

By: */s/ Ebon Swofford*
Ebon Swofford
Attorney-in-Charge for Defendant
Harris Health System
Texas Bar No. 00792588
S.D. Tex ID No. 423962
2525 Holly Hall, Suite 190
Houston, Texas 77054
*Ebon.Swofford@harrishealth.org*
(713) 566-6559 (telephone)
(713) 566-6558 (facsimile)

<u>**CERTIFICATE OF SERVICE**</u>

  I hereby certify that on June 10, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.

Theressa F. Ford
The Ford 4 Justice Law Firm, PLLC
2616 S. Loop West Suite 100-B
Houston, Texas 77054
*tford@ford4justice.com*
**Attorney for Plaintiff**


         */s/ Ebon Swofford*